**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alvin Whitehair | No. CV17-08278-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, an Administrative Agency of the United States, | |
| Defendant. | |

Plaintiff Alvin Whitehair, a member of the Navajo Nation, seeks judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR") denying him relocation benefits under the Navajo-Hopi Settlement Act. Doc. 1. The parties have filed cross motions for summary judgment. Docs. 15, 16. The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will deny the motion and remand for further proceedings.

**I.    Background.**

President Chester A. Arthur set aside a 2.5 million acre reservation in Arizona in 1882 for the Hopi Nation and "such other Indians as the Secretary of the Interior may see fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Members of the Navajo Nation subsequently settled on the

reservation alongside the Hopi. *Id.* In the decades that followed, attempts to resolve inter-tribal conflicts ultimately resulted in the Navajo-Hopi Settlement Act in 1974. *Id.* The Act authorized the district court to partition the reservation and created Defendant's predecessor to help relocate tribal members who resided on land partitioned to the other tribe. *Id.* at 1121-22.

To be eligible for relocation benefits, a Navajo applicant has the burden of showing that he was (1) a legal resident of the Hopi Partitioned Lands ("HPL") on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147. An unmarried applicant may prove his head-of-household status by demonstrating that he "actually maintained and supported" himself. 25 C.F.R. § 700.69(a)(2).

Plaintiff was born on February 8, 1969 (A.R. 299) and was a legal resident of the HPL on December 22, 1974 (A.R. 131, 302). Plaintiff attended school through the eighth grade at Shonto Boarding School and then enrolled in Richfield Junior High School in Utah for ninth grade. *Id.* Plaintiff lived with a foster father, Reed Christensen, while attending school in Richfield. *Id.* At the end of ninth grade, Plaintiff returned to live with his parents on the Reservation. *Id.*

When Plaintiff returned, he brought with him several candy vending machines he had obtained from Christensen and placed them at various locations. A.R. 299-300. Plaintiff testified that he placed 32 vending machines in the summer of 1985, and that he netted $30 per machine every two weeks. A.R. 300. Plaintiff testified that in 1985 and 1986 he had an income of $700-$1,000 every two weeks from all the machines. *Id.* In the summer of 1985, Plaintiff also worked for the Forest Lake Chapter Summer Youth Program, where he earned $552. *Id.* In the summer of 1986, Plaintiff again worked for the youth program and earned $513. *Id.* Plaintiff ended his vending machine business and returned to Utah in the summer of 1986. *Id.* Around March 1986, Plaintiff began living at his parents' home on the Reservation with his girlfriend, Daisy, and they had their first child in November 1987. A.R. 300-01.

On December 20, 2005, Defendant denied Plaintiff's application for relocation benefits, finding that he did not obtain head-of-household status. A.R. 60. Plaintiff appealed Defendant's decision on January 10, 2006. A.R. 71. At a September 2011 hearing, the Hearing Officer heard testimony from Plaintiff, Reed Christensen, Albert Whitehair, Plaintiff's brother, and Daisy Whitehair, Plaintiff's wife. A.R. 131-218. The only issue was whether Plaintiff had attained head-of-household status. A.R. 131. The Hearing Officer issued a decision in December 2011 affirming the denial of benefits (A.R. 303), which became Defendant's final decision in January 2012 (A.R. 308).

## II. Legal Standard.

A reviewing court may reverse an ONHIR decision under the Administrative Procedure Act ("APA") if it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see Bedoni*, 878 F.2d at 1122. A decision is arbitrary and capricious if the agency "'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Substantial evidence is "more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chu v. Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1250 (9th Cir. 2016) (internal quotation marks and citation omitted). The standard is deferential. The Court "may not substitute its judgment for that of the agency." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (internal quotation marks and citation omitted).

"[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Laughter v. ONHIR*, No. CV-16-08196-PCT-DLR, 2017 WL 2806841, at *2 (D. Ariz. June 29, 2017) (internal

quotation marks and citation omitted). "[T]he focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. Summary Judgment.

Plaintiff argues for summary judgment in his favor because (1) the Hearing Officer's adverse credibility findings are unsupported; (2) substantial evidence does not support the Hearing Officer's finding that Plaintiff did not attain head-of-household status by July 7, 1986; and (3) the denial of benefits was unsupported by substantial evidence, arbitrary, capricious, and contrary to law. Doc. 15 at 2-3.

#### A. Credibility Findings.

Plaintiff argues that the Hearing Officer failed to provide specific and cogent reasons for his negative credibility findings.[1] Doc. 15 at 7. Defendant urges the Court to defer to the Officer's decision. Doc. 16 at 8, 12.

"When the decision of [a hearing officer] rests on a negative credibility evaluation, [he] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec. of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). An agency's "credibility findings are granted substantial deference by reviewing courts." *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). The Ninth Circuit has recognized that the hearing officer alone is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness's] testimony has about it the ring of truth." *Begay v. Office of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d

---

[1] Plaintiff does not appear to challenge the Hearing Officer's credibility findings as to Reed Christensen and Albert Whitehair. *See* Doc. 15 at 7-9.

- 4 -

1040, 1049 (D. Ariz. 2018) (citing *Sarvia–Quintanilla v. U.S. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985)).

**1.      Plaintiff.**

Plaintiff testified about his education, his summer employment between school years, and his vending machine business in 1985-86. A.R. 301; 131-86. The Hearing Officer found that Plaintiff was "a credible witness about his education and about placing some vending machines[,] but [that Plaintiff's] estimates of income from those vending machines [were] not credible." A.R. 301.

The Officer found that Plaintiff's claimed income from his vending machine business was not credible because: (1) if the business had been as lucrative as alleged – netting Plaintiff some $20,000 in two years while in high school – he would not simply have abandoned the business in 1986 and returned to Utah; (2) Plaintiff provided no records, receipts, or signed contracts from the business, including documents regarding the machines' placement and any royalties he paid for installing his machines in various locations; (3) Daisy's testimony that she saw him with coin rollers during this period was weak corroborative evidence; (4) the Officer questioned whether candy was sold for a quarter from vending machines during this time; (5) the Officer found no proof that each of the 32 vending machines was making between 175 and 250 sales every two weeks, as would be required to achieve the income Plaintiff claimed; (6) the rugged terrain on the reservation would have prevented Plaintiff from traveling to service his machines with the frequency required to maintain the level of sales he claimed; and (7) Plaintiff and Christensen described their agreement about the transfer of machines differently. A.R. 304-05. The Officer disagreed that he was required to take Plaintiff's testimony as true when Defendant offered no controverting testimony about Plaintiff's earnings. A.R. 303.

Contrary to Plaintiff's assertion, the Hearing Officer provided several specific, cogent reasons for discrediting Plaintiff's income testimony. Defendant is required to determine whether Plaintiff "actually maintained and supported" himself. 25 C.F.R.

§ 700.69(a)(2). In so doing, the Hearing Officer is not required to take at face value Plaintiff's testimony that he earned a certain income; the Officer may consider lack of documentation and the unrealistic amount of claimed earnings. *See Benally v. Office of Navajo & Hopi Relocation*, No. 13–CV–8096–PCT–PGR, 2014 WL 523016, at *3 (D. Ariz. Feb. 10, 2014). Plaintiff testified to making $700 to $1000 every two weeks from 32 vending machines. The Officer accepted Plaintiff's testimony that the business existed, but found the extent of Plaintiff's alleged earnings unlikely given the nature of the business and the lack of any corroborative evidence. This determination was not arbitrary and capricious. *See Benally*, 2014 WL 523016, at *3 (Officer's finding that earnings were exaggerated and not supported by contemporaneous documentation was not arbitrary and capricious).

Plaintiff also argues that the Officer diverged from Defendant's precedent – which he asserts does not require corroborative documentation of income – by discrediting Plaintiff for failing to present records from 25 years ago. Doc. 15 at 13. As support, Plaintiff cites five other relocation benefits cases and attaches hearing officer decisions from those cases as exhibits. Doc. 15-1 to 15-5. The Court does not consider this to be persuasive evidence. The documents provided by Plaintiff consist of only five to seven pages from each case. *Id*. The Court cannot determine what evidence was before the hearing officer in each case, and Plaintiff's assertions about the cases in his brief cannot always be confirmed in the pages he attaches. Further, Plaintiff cites no authority to suggest that the five hearing officer decisions should have had any precedential value in this case, nor can the Court conclude that Plaintiff's hand-picked sample of cases represents a "settled course of adjudication" and "a general policy by which [Defendant's] exercise of discretion will be governed," as Plaintiff claims. *Id.* at 13 (citing *California Trout v. F.E.R.C.*, 572 F.3d 1003, 1023 (9th Cir. 2009)). What is more, the Court's decision in this case must be based on "the administrative record already in existence." *Camp*, 411 U.S. at 142. The exhibits provided by Plaintiff were not in the record at the time of the Hearing Officer's decision, and the Court accordingly will not consider them now. *See Fence Creek*

*Co. v. U.S. Forest Serv.*, 603 F.3d 1125, 1131 (9th Cir. 2010) (plaintiff did not meet "its heavy burden to show that the additional materials sought [were] necessary to adequately review the [agency's] decision").

### 2. Daisy Whitehair.

Daisy Whitehair, Plaintiff's wife, testified that she began living with Plaintiff in March 1986, which she equated to marriage. A.R. 210. The Hearing Officer interpreted Daisy's testimony as referring to a common law marriage beginning in 1986. *Id.*; A.R. 302. Daisy testified that she and Plaintiff obtained a marriage license in April 1993 (A.R. 211), and also about Plaintiff's vending machine business (A.R. 209-17). The Hearing Officer stated that: "Daisy Whitehair's testimony about being married is not credible but other testimony is credible, albeit limited in materiality." A.R. 302.

Plaintiff seems to conflate his credibility argument about Daisy with whether he satisfied the head of household requirement by his living arrangement with Daisy in 1986. *See* Doc. 15 at 8. Plaintiff argues that nothing supports the Officer's determination that Daisy's testimony about her "conjugal relationship" with Plaintiff was not credible. *Id.* But the Hearing Officer did not discredit Daisy's testimony that she and Plaintiff lived together. The Officer's credibility determination only declined to find that Daisy and Plaintiff were married in March 1986. And Daisy acknowledged they did not have a marriage license until 1993. Because Daisy and Plaintiff did not marry until after the relevant time period, their relationship does not provide a basis for head of household status.

### B. Head of Household.

As noted above, a Navajo applicant has the burden of proving that he was (1) a legal resident of the HPL on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147. Defendant concedes that Plaintiff satisfies the first element. A.R. 131, 302.

Under ONHIR regulations, a "household" is "[a] single person who at the time [of] his[] residence on land partitioned to the Tribe of which he[] is not a member actually

maintained and supported him[self] or was legally married and is now legally divorced." 25 C.F.R. § 700.69(a)(2). An unmarried applicant qualifies as a "head of household" when he becomes married or if he actually maintains and supports himself. *Id.* § 700.69(a)(1), (a)(2). ONHIR does not specify an income at which an applicant actually maintains and supports himself. Doc. 16 at 11. But Defendant concedes that it has often "held that an applicant who earn[s] at least $1,300 per year can make a prima facie showing of self-supporting status." *Id.*; *see also Benally*, 2014 WL 523016, at *3.

Plaintiff argues that he satisfied the head of household requirement for several reasons. First, in support of Plaintiff's alleged income in 1985 and 1986, Plaintiff cites testimony from his witnesses that corroborated the existence of his business. Doc. 15 at 15. The Hearing Officer found that Plaintiff had a vending machine business, and discredited only the amount of Plaintiff's claimed income. Plaintiff does not contend that his witnesses testified about the amount of his earnings. *Id.* at 14-18.

Plaintiff argues that he satisfied the head of household requirement through his relationship with Daisy, with whom he began living in March 1986. Doc. 15 at 16-17. But Plaintiff concedes that he was not legally married as of July 7, 1986, and he cites no authority for the proposition that § 700(a)(1), which defines household, also provides a method for an unmarried applicant to obtain head of household status.

Plaintiff also argues that to meet Defendant's minimum income level – about $1,300 annually – he had to show earnings of only $800 a year in addition to the $500 he earned from the summer youth program in 1985 and 1986. Doc. 15 at 15. Plaintiff asserts that even if his estimated earnings of $700-$1,000 every two weeks from the vending machines are not accurate, he satisfied his burden because the Hearing Officer believed his business existed and "surely [he] made sufficient income to greatly exceed the minimum standard." *Id.*

As discussed above, the Hearing Officer stated specific and cogent reasons for discrediting Plaintiff's testimony that he earned some $20,000 from the vending machines in 1985 and 1986, but the Hearing Officer made no other findings about Plaintiff's income

during those years. Plaintiff had the burden of establishing his head of household status, 25 C.F.R. § 700.147(b), but he need not prove an income of $20,000 to satisfy that burden. Defendant concedes that it has often found "that an applicant who earn[s] at least $1,300 per year can make a prima facie showing of self-supporting status." Doc. 16 at 11; *see also Benally*, 2014 WL 523016, at *3. Plaintiff would have earned $800 each year if he averaged only $66.67 a month from the 32 machines he placed, or $2.08 dollars a month for each machine. The Hearing Officer did not disagree that Plaintiff operated a vending machine business in 1985 and 1986, but he made no findings about the likely income from that business. The Officer rejected Plaintiff's estimate, but otherwise failed to address whether Plaintiff "actually maintain[ed] and support[ed] himself" on a lesser amount. 25 C.F.R. § 700.69(a)(1). The Court finds this to be arbitrary and capricious because the Officer "entirely failed to consider an important aspect of the problem." *O'Keeffe's, Inc.*, 92 F.3d at 942.

**C. Remand.**

"If the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Begay v. Office of Navajo & Hopi Indian Relocation*, No. CV-16-08221-PCT-DGC, 2017 WL 4297348, at *4 (D. Ariz. Sep. 28, 2017) quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). A rare circumstance might arise where the reviewing court finds that the record clearly demonstrates an applicant's eligibility for relocation benefits. *E.g.*, *Bedoni*, 878 F.2d at 1126; *Herbert v. Office of Navajo & Hopi Indian Relocation*, No. CV 06-03014-PCT-NVW, 2008 WL 11338896, at *8 (Feb. 27, 2008).

In this case, further proceedings are warranted. Because the Hearing Officer made no findings about the number of machines Plaintiff placed or the income he earned from those machines, the Court cannot find on this record that Plaintiff earned at least $800 in 1985 and 1986 or otherwise established head of household status on July 7, 1986. The Court will remand for an appropriate decision on Plaintiff's income from his business.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Doc. 15) is **granted in part and denied in part**. The motion is granted to the extent it argues that the Hearing Officer's decision was legally flawed, but denied to the extent it seeks an award of benefits to Plaintiff. Defendant's motion for summary judgment (Doc. 16) is **denied.** The matter is **remanded** for further proceedings consistent with this order.

2. The Clerk of Court is directed to enter judgment consistent with this Order and terminate this case.

Dated this 6th day of December, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge